UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 4:19-CR-712-AGF |
| v. | ) | |
| | ) | |
| DENZEL HOUSTON, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

1.   **PARTIES:**

The parties are DENZEL HOUSTON (hereinafter, "Defendant"), represented by Defense

Counsel Melissa Goymerac, and the United States of America (hereinafter "United States"),

represented by the Office of the United States Attorney for the Eastern District of Missouri. This

agreement does not, and is not intended to, bind any governmental office other than the United

States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by

this agreement.

2.   **GUILTY PLEA:**

A.   **The Plea:**   Pursuant to Rule 11(c)(1)(A), of the Federal Rules of Criminal

Procedure, in exchange for Defendant's voluntary plea of guilty to Counts Two and Three of the

Superseding Indictment, the United States agrees to move for the dismissal of Counts One, Four,

Five, Six, Seven and Eight at the time of sentencing. The United States, in addition, agrees that no

additional federal prosecution will be brought in this District relative to Defendant's violations of

Page **1** of **14**

federal law, known to the United States at this time, arising out of the events set forth in the Superseding Indictment.

      **B.**    **The Sentence:**    The parties agree that the recommendations contained herein fairly and accurately set forth some of the guidelines that may be applicable to this case. **The parties further agree to jointly recommend a sentence of one hundred and thirty-two (132) months at the time of sentencing**. Both parties understand that the Court is neither a party to nor bound by the Guideline recommendation agreed to in this document.

**3.**    **ELEMENTS:**

      **A.**    **Count Two:** As to Count Two of the Superseding Indictment, Defendant admits to knowingly violating Title 21, United States Code, Section 841(a)(1), and admits there is a factual basis for the plea, and further fully understands that the elements of the crime are as follows:

      **(i)**    Defendant possessed methamphetamine;

      **(ii)**    Defendant knew that he was in possession of methamphetamine, a Schedule II controlled substance;

      **(iii)**    Defendant intended to distribute some, or all, of the methamphetamine to another person; and,

      **(iv)**    Defendant possessed 50 grams or more, but less than 500 grams, of a mixture or substance containing methamphetamine.

*D.H*

      **B.**    **Count ~~Three~~:** *FOUR* As to Count ~~Three~~ *FOUR* of the Superseding Indictment, Defendant admits to knowingly violating Title 18, United States Code, Section 924(c), and admits there is a factual basis for the plea, and further fully understands that the elements of the crime are as follows:

(i)     Defendant committed the crime of possession with the intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in excess of 50 grams;

(ii)    Defendant knowingly possessed a firearm in further of that crime.

**4.     FACTS:**

The parties agree that the facts are as follows and that the United States would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

On June 25, 2019, at or around 10:00 a.m., St. Louis Metropolitan Police were on routine patrol in the Clinton Peabody Housing Complex, located in the Peabody-Darst-Webbe neighborhood, St. Louis, a jurisdiction within the Eastern District of Missouri. Officers' attention was drawn to a silver Nissan Maxima that had sustained ballistic damage to its hood—the sedan was parked in front of 1447 Hickory Lane. Police observed that the vehicle's sole occupant, later determined to be Defendant, exited upon seeing their marked police vehicle and began pacing around the area.

Police exited their marked patrol vehicle and approached the silver Nissan Maxima while Defendant walked towards the rear of 1445 Peabody Court. Defendant returned moments later and inquired as to why law enforcement was investigating his vehicle. Officers obtained Defendant's name from him, conducted a records search, and discovered that Defendant was a prohibited person from possessing a firearm. Police observed a glass jar sitting on the backseat, in front of a duffel bag, through the vehicle's windows. The glass jar appeared to hold several plastic bags containing a white substance that officers believed to be contraband. Police also observed a semi-

Page **3** of **14**

automatic pistol, that was later determined to be a loaded Glock make, 23 Gen4 model, .40 Smith and Wesson caliber, semi-automatic pistol sitting on the driver's side floorboard in plain view.

Officers conducted a computer search of the vehicle, discovered that the Nissan Maxima was a rental, and requested that the sedan be towed so that officers could conduct additional investigation. Officers seized the suspected contraband from inside of the vehicle and discovered that the glass jar contained multiple plastic bags containing a crystal-like substance, powder-filled capsules, and a rock-like substance. Police believed that the suspected controlled substances were methamphetamine, heroin, and crack cocaine. The duffel bag also had multiple plastic bags containing a crystal-like substance, in addition to a digital scale, unknown pills, sandwich bags, powder-filled plates, empty capsules, blenders, and Dormin.

The suspected controlled substances were submitted to, and analyzed by, an expert criminalist with the St. Louis Metropolitan Police Crime Laboratory. The criminalist confirmed the suspected contraband contained a mixture or substance containing a detectable amount of methamphetamine, fentanyl, oxycodone, and alprazolam. Defendant admits to possessing methamphetamine, in excess of 335 grams, and fentanyl, in excess of 6 grams, with intent to distribute all or some to another person.

An expert firearm examiner later determined that the recovered firearm can expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law. Defendant admits to possessing the firearm in furtherance of his possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, a Scheduled II controlled substance, in excess of 50 grams, as charged in Count Two of the Superseding Indictment, among other controlled substances. Defendant further admits that the firearm was

possessed to protect him from being robbed of the methamphetamine, and/or cash proceeds, Defendant intended to make from methamphetamine distribution.

On September 10, 2019, at or around 0728 hours, at or near 8527 Katherine Avenue, a residential property located in St. Louis County, a jurisdiction within the Eastern District of Missouri, Alcohol, Tobacco, Firearms and Explosives agents, in conjunction with St. Louis Metropolitan Police, observed Defendant exiting the said residence and entering into a parked silver Lexus ES 350. Law enforcement approached Defendant's vehicle, just as he started backing out of the driveway, and their patrol vehicle was struck. Law enforcement commanded Defendant to exit his vehicle. Defendant complied and later indicated that there were "a couple" grams of methamphetamine and fentanyl in the top drawer of his bedroom dresser.

Law enforcement obtained written permission to search Defendant's residence and retrieved a loaded Taurus make, PT140 model, .40 caliber, semi-automatic pistol. Law enforcement, in addition thereto, seized ammunition, plastic bags containing various controlled substances, two coffee grinders, a bottle of Dormin, and a pill press from Defendant's residence. During a Mirandized law enforcement interview, Defendant admitted to being re-supplied with narcotics every three days but declined to provide the name of his supplier.

The suspected controlled substances were submitted to and analyzed by an expert criminalist with the St. Louis Metropolitan Police Crime Laboratory. The criminalist confirmed the suspected contraband contained a mixture or substance containing a detectable amount of methamphetamine, fentanyl, and marijuana. Defendant admits to possessing methamphetamine, in excess of 172 grams, fentanyl, in excess of 22 grams, and marijuana, 1.31 grams, with intent to distribute all or some to another person. Defendant further admits that he is aware that

Page **5** of **14**

methamphetamine is a Schedule II controlled substance.

5.    **STATUTORY PENALTIES:**

Defendant fully understands that the maximum possible penalties provided by law for the crimes to which Defendant is pleading guilty are:

A.    **Count Two**: imprisonment of not less than five years nor more than forty years, a fine of not more than $5,000,000, or both such imprisonment and fine. The Court shall impose a period of supervised release of at least four years. **Defendant also fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of at least five years.**

*FOUR*   DH   RF

B.    **Count Three**: imprisonment of not less than five years, consecutive to any other sentence imposed; a fine of not more than $250,000; or both such imprisonment and fine. The Court shall impose a period of supervised release of not less than three years, but not more than life. **Defendant fully understands that the crime to which a guilty plea is being entered requires a mandatory minimum term of imprisonment of five years consecutive to any other sentence imposed.**

6.    **U.S. SENTENCING GUIDELINES: 2018 MANUAL**

Defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the U.S. Sentencing Guidelines Total Offense Level provisions that apply.

A.    **Offense Conduct:**

## COUNT TWO

### POSSESSION WITH INTENT TO DISTRIBUTE A MIXTURE OF SUBSTANCE CONTAINING A DETECTABLE AMOUNT OF METHAMPHETAMINE IN EXCESS OF 50 GRAMS

     i.    **Chapter 2 Offense Conduct**:

          a.    **Base Offense Level**:  The parties recommend that as to Count Two of the Superseding Indictment, the base offense level for Defendant is 30 pursuant to Section 2D1.1(c)(5) because the controlled substances for which the Defendant is accountable is at least 1000 kilograms but less than 3,000 kilograms of a converted drug weight.

          b.    **Specific Offense Characteristics**: The parties agree that the following Specific Offense Characteristics apply: none known at this time.

     ii.    **Chapter 3 Adjustments:**

          a.    **Acceptance of Responsibility**: The parties recommend that two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, and if Defendant is otherwise eligible, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

The parties agree that if Defendant does not abide by all of the agreements made within this document, Defendant's failure to comply is grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. The parties further agree that Defendant's

eligibility for a reduction pursuant to Sentencing Guidelines Section 3E1.1 is based upon the information known at the present time and that any actions of Defendant which occur or which become known to the United States subsequent to this agreement and are inconsistent with Defendant's acceptance of responsibility including, but not limited to criminal conduct, are grounds for the loss of acceptance of responsibility pursuant to Sentencing Guidelines Section 3E1.1. In any event, the parties agree that all of the remaining provisions of this agreement remain valid and in full force and effect.

## COUNT THREE

### POSSESSION OF A FIREARM IN FURTHERANCE OF DRUG TRAFFICKING

    **i.**   **Chapter 2 Offense Conduct**:

        **a.**   **Base Offense Level**:   The parties agree that the Base Offense Level for Count Three is found in Section 2K2.4(b).

        **b.**   **Specific Offense Characteristics**:   The parties agree that the following Specific Offense Characteristics apply: none known at this time.

    **ii.**   **Chapter 3 and 4 Adjustments:**   Pursuant to Section 2K2.4(b) and Application Note 5, Chapters Three and Four adjustments are not applicable under this guideline. Therefore, as to Count Three, Defendant is not subject to an enhancement under Section 2D1.1(b)(2) and is not entitled to a reduction for an acceptance of responsibility under Section 3E1.1(a).

   **B.**   **Estimated Total Offense Level**:

    **i.**   **Count Two:** The parties agree that the Total Offense Level for Count Two is 27 unless Defendant is a Career Offender.

Depending on the underlying offense and Defendant's criminal history, Defendant could be a Career Offender pursuant to Section 4B1.1. If the Court finds Defendant is a Career Offender, the Total Offense Level may be higher, and the Criminal History Category may be as high as Category VI. Defendant has discussed these possibilities with defense counsel. Both parties reserve the right to argue that the Defendant is or is not a Career Offender.

*Four*

ii.    **Count Three**: The parties agree that Defendant will receive a mandatory minimum sentence of 60 months. Defendant's sentence shall run consecutive to any other sentence Defendant may receive.

C.    **Criminal History:**  The determination of Defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the Defendant's criminal history and the applicable category. Defendant's criminal history is known to him and is substantially available in the Pretrial Services Report.

D.    **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

7.    **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

A.    **Appeal:**  Defendant has been fully apprised by defense counsel of Defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

      **i.**    **Non-Sentencing Issues:**  The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

      **ii.**    **Sentencing Issues:**  In the event the Court accepts the plea and sentences Defendant consistent with or below the parties' jointly recommended sentence of 132 months, then, as a part of this agreement, Defendant hereby waives all rights to appeal all sentencing issues other than Criminal History. Similarly, the United States hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea and sentences Defendant consistent with or above the parties' jointly recommended sentence of 132 months.

    **B.**    **Habeas Corpus:**  Defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

    **C.**    **Right to Records:**  Defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.**    **OTHER:**

    **A.**    **Disclosures Required by the United States Probation Office:**  Defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the United States.

**B.    Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the Defendant.

**C.    Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the Defendant and may impose special conditions related to the crime Defendant committed. These conditions will be restrictions on Defendant to which Defendant will be required to adhere. Violation of the conditions of supervised release resulting in revocation may require Defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. Defendant understands that parole has been abolished.

**D.    Mandatory Special Assessment:**  This offense is subject to the provisions of the Criminal Fines Improvement Act of 1987 and the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which Defendant agrees to pay at the time of sentencing. Money paid by Defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**E.    Possibility of Detention:**  Defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**F.    Fines and Costs of Incarceration and Supervision:**  The Court may impose a fine, costs of incarceration, and costs of supervision. Defendant agrees that any fine imposed by the Court will be due and payable immediately.

**G.**    **Forfeiture:**  Defendant agrees to forfeit all of Defendant's interest in all items seized by law-enforcement officials during the course of their investigation. Defendant admits that all United States currency, weapons, property, and assets seized by law enforcement officials during their investigation constitute the proceeds of Defendant's illegal activity, were commingled with illegal proceeds, or were used to facilitate the illegal activity. Defendant agrees to execute any documents and take all steps needed to transfer title or ownership of said items to the United States and to rebut the claims of nominees and/or alleged third party owners. Defendant further agrees that said items may be disposed of by law enforcement officials in any manner.

**9.**    **ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:**

In pleading guilty, Defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the United States to prove the elements of the offenses charged against Defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. Defendant further understands that by this guilty plea, Defendant expressly waives all the rights set forth in this paragraph.

Defendant fully understands that Defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. Defendant's counsel has explained these rights and the consequences of the waiver of these rights.

Defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

Defendant is fully satisfied with the representation received from defense counsel. Defendant has reviewed the United States' evidence and discussed the United States' case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which Defendant has requested relative to the United States' case and any defenses.

10.   **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between Defendant and the United States, and no other promises or inducements have been made, directly or indirectly, by any agent of the United States, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, Defendant states that no person has, directly or indirectly, threatened or coerced Defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

Defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. Defendant further acknowledges that this guilty plea is made of Defendant's own free will and that Defendant is, in fact, guilty.

11.   **CONSEQUENCES OF POST-PLEA MISCONDUCT:**

After pleading guilty and before sentencing, if Defendant commits any crime, other than minor traffic offenses, violates any conditions of release that results in revocation, violates any term of this guilty-plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its

option, may be released from its obligations under this agreement. The United States may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12.    NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the Defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the United States agrees to dismiss or not to bring.

08/19/21
_____
Date

KOURTNEY M. BELL
Assistant United States Attorney

8/12/21
_____
Date

DENZEL HOUSTON
Defendant

8/12/21
_____
Date

MELISSA GOYMERAC
Attorney for Defendant

Page 14 of 14